No. 41 August 10, 2017 723

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOAQUIN SIERRA,
*Petitioner on Review.*

(CC 05C40355; CA A153534; SC S064237)

On review from the Court of Appeals.*

Argued and submitted May 8, 2017.

David O. Ferry, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Timothy A Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Frederick M. Boss, Deputy Attorney General, and Benjamin Gutman, Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, and Nakamoto, Justices, and Baldwin, Senior Justice pro tempore.**

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
  *   On appeal from Marion County Circuit Court, Susan M. Tripp, Judge. 278 Or App 96, 374 P3d 952 (2016)

  **  Brewer, J., retired June 30, 2017, and did not participate in the decision of this case. Flynn and Duncan, JJ., did not participate in the consideration or decision of this case.

**WALTERS, J.**

This court reversed two of defendant's nine convictions and remanded the case for resentencing on the remaining convictions. *State v. Sierra*, 349 Or 506, 254 P3d 149 (2010), *modified and adh'd to on recons*, 349 Or 604, 247 P3d 759 (2011). On remand, a different judge, who did not preside over defendant's original trial, imposed a longer total sentence than had the original trial court. This case requires us to decide two issues: first, whether Oregon common law or the federal Double Jeopardy Clause precludes the second sentencing court from imposing new sentences on defendant's convictions for unlawful use of a weapon (UUW) because defendant already had served the previously imposed sentences; and second, whether the Due Process Clause, as interpreted by the United States Supreme Court in *North Carolina v. Pearce*, 395 US 711, 89 S Ct 2072, 23 L Ed 2d 656 (1969), and by this court in *State v. Partain*, 349 Or 10, 239 P3d 232 (2010), precludes the imposition of a more severe sentence than originally imposed. The answer to both questions is no. We affirm the decisions of the trial court and the Court of Appeals, *State v. Sierra*, 278 Or App 96, 374 P3d 952 (2016).

## I.  BACKGROUND

A jury convicted defendant of nine offenses: one count of first-degree kidnapping; two counts of second-degree kidnapping; one count of fourth-degree assault; and five counts of unlawful use of a weapon (UUW). The state did not allege enhancement factors. The trial court sentenced defendant to a total of 250 months in prison. The court imposed a 110-month sentence on the conviction for first-degree kidnapping, two consecutive 70-month sentences on the convictions for second-degree kidnapping, and concurrent sentences of 14 months or less on the remaining convictions (including all of defendant's UUW convictions). On review, this court concluded that the evidence did not support the convictions for two counts of second-degree kidnapping because the state had failed to prove the act element. *Sierra*, 349 Or at 518. The court reversed defendant's convictions on those counts and remanded the case to the

trial court for resentencing. *Sierra*, 349 Or at 607 (*modified and adh'd to on recons*).

On remand, before a different judge, the state sought an upward departure sentence on defendant's conviction for first-degree kidnapping, as well as longer sentences than originally imposed on the other convictions. On the kidnapping conviction, the state alleged, and the sentencing jury found, four enhancement factors—the use of a weapon; threat of or actual violence towards a witness; prior sanctions should have deterred defendant's criminal conduct and did not; and incarceration is necessary for public safety. Based on the jury's findings, the state sought, by upward departure, a sentence of 220 months on that count—an increase of 110 months over defendant's original sentence. The state also asked the court to place four of defendant's UUW convictions (counts 5, 7, 10, and 11) into gridblock 6-D and impose the 14-month presumptive sentence on each and to require defendant to serve those four sentences consecutively to each other and to the 220-month sentence imposed on the kidnapping conviction, for a total sentence of 276 months.

Defendant objected under *Partain*, arguing that the imposition of a longer total sentence would be presumed vindictive because the second sentencing court would not be basing its sentence on information unknown to the first court at the time of the original sentencing. Defendant also contended that the common-law rule of *State v. Smith*, 323 Or 450, 918 P2d 824 (1996), prevented the sentencing court from imposing new sentences on any of the UUW convictions because defendant had fully served the sentences originally imposed on those counts. Finally, defendant argued that revisiting a completely served sentence would deny him due process and the swift and complete administration of justice, under Article I, section 10, of the Oregon Constitution.[1]

The sentencing court overruled defendant's objections and imposed the sentence requested by the state. The

---

[1] Defendant also objected to the enhancement factors on the ground that allowing the state to rely on enhancement factors that it had withdrawn when defendant was initially sentenced had the effect of denying him due process and equal protection of law. That issue is not before this court on review.

court explained that defendant's sentence complied with the *Partain* requirements because the court had based the increased sentence on information not available to the first court: the apparent continued impact of the crimes on the victims and defendant's prison disciplinary record. The court also explained that it was imposing an upward durational departure sentence on the first-degree kidnapping conviction based on the enhancement factors found by the jury, and that the sentences requested by the state on the UUW convictions were appropriate under the sentencing guidelines.

Defendant appealed to the Court of Appeals, arguing that (1) the *Smith* rule and the Double Jeopardy Clause of the federal constitution prevented the sentencing court from applying ORS 138.222(5)(b) and imposing new sentences on any of the UUW convictions; and (2) under *Pearce* and *Partain*, the Court of Appeals was required to presume that the judge on remand had acted vindictively and that due process precluded imposition of a more severe sentence. The Court of Appeals rejected defendant's arguments, holding that the *Smith* rule did not bar the trial court from applying ORS 138.222(5)(b) and modifying defendant's UUW sentences on remand and that the trial court had satisfied the *Pearce/Partain* requirements. *Sierra*, 278 Or at 100-105. The court also held that defendant's double jeopardy argument was not preserved and did not warrant plain error review. *Id*. at 98.[2]

Defendant petitioned for review in this court, renewing the arguments presented before the Court of Appeals. We allowed defendant's petition.

---

[2] Defendant also argued before the Court of Appeals, and argues again on review, that the second sentencing court violated due process and the *Ex Post Facto* Clause of Article I, section 21, of the Oregon Constitution by applying the *Partain* rule to his case. According to defendant, the rule abrogated by *Partain*—the rule of *State v. Turner*, 247 Or 301, 429 P2d 565 (1967)—should apply to his case because he originally appealed his kidnapping convictions in 2006, and the *Partain* rule was announced by this court in 2009. Defendant conceded before the Court of Appeals that he had not preserved an objection under the *Ex Post Facto* Clause, and that court rejected defendant's argument without discussion. We also reject that argument as unpreserved and decline to exercise our discretion to review it as plain error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (explaining requirements for plain error review and appellate court's discretion to consider plain error).

## II.   ANALYSIS

A.   *Defendant's Objections to Increases in His Sentence Based on Crimes of UUW*

   1.   *Defendant's common-law argument*

We turn, first, to defendant's common-law argument, because our ordinary practice is to analyze state law claims before reaching a party's federal constitutional claims. *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981). Defendant contends that the common-law *Smith* rule, which prohibits a sentencing court from modifying a sentence that has been served, precluded the trial court from imposing a new sentence on defendant's UUW convictions. The state responds that the legislature partially overruled *Smith* when it enacted what is now codified as ORS 138.222(5)(b). That statute provides that, when an appellate court reverses the judgment of conviction on any count in a multi-count case in which at least one count is a felony, "the appellate court shall remand the case to the trial court for resentencing on *the affirmed count or counts.*" ORS 138.222(5)(b) (emphasis added). According to the state, in the limited circumstance in which a court reverses one or more convictions and affirms the other convictions, and the court does not otherwise rule that any of the sentences were imposed in error, ORS 138.222(5)(b) has supplanted *Smith* to require that the court remand the case for resentencing on all remaining counts.

In *Smith*, the defendant was convicted of numerous felony and misdemeanor offenses and received a sentence of consecutive and concurrent sentences totaling 120 months. 323 Or at 452. After the Court of Appeals affirmed the defendant's convictions but reversed the sentences on some convictions, *State v. Smith*, 116 Or App 558, 563, 842 P2d 805 (1992), *adh'd to on recons*, 120 Or App 438, 852 P2d 934 (1993), the defendant was resentenced to 102 months in prison. *Smith*, 323 Or at 452. The defendant then appealed from the amended judgment, arguing that the sentencing court had erred when it imposed new consecutive sentences on some of his misdemeanor convictions because he already had served the original sentences on those convictions at the time of the resentencing. *Id*. at 452-53. On review, this

court recognized the common-law rule that "a sentencing court lacks the authority to modify a valid sentence once the original sentence has been executed" and determined that the same result follows "when the original sentence not only has been executed, but also has been served." *Id*. at 453-54.

Defendant and the state agree that, in response to the Court of Appeals decision in *Smith*, the legislature amended ORS 138.222(5)(a), which governs the scope of review of sentences imposed on felony convictions, to expressly authorize a remand for resentencing of the entire case when an appellate court determines that there has been a sentencing error. The amended provision provides,

> "The appellate court may reverse or affirm the sentence. If the appellate court concludes that the trial court's factual findings are not supported by evidence in the record or do not establish substantial and compelling reasons for a departure, it shall remand the case to the trial court for resentencing. *If the appellate court determines that the sentencing court, in imposing a sentence in the case, committed an error that requires resentencing, the appellate court shall remand the entire case for resentencing. The sentencing court may impose a new sentence for any conviction in the remanded case*."

ORS 138.222(5)(a); Or Laws 1993, ch 692, § 1 (added language italicized). As this court recognized in *Partain*, that amendment "unambiguously provides that, when a case is remanded because of a particular sentencing error, the sentencing court may impose different sentences on any and all counts—even those not affected by the identified error." 349 Or at 19.

In 2005, the legislature enacted ORS 138.222(5)(b). Or Laws 2005, ch 563, § 2. That provision applies when an appellate court reverses the judgment of conviction on any count in a multi-count case, where at least one count is a felony. ORS 138.222(5)(b) provides,

> "If the appellate court, in a case involving multiple counts of which at least one is a felony, reverses the judgment of conviction on any count and affirms other counts, *the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts*."

(Emphasis added.)

Defendant makes two arguments in support of his position that the *Smith* common-law rule nevertheless governs in this case. We find neither persuasive. First, defendant contends that neither ORS 138.222(5)(a) nor ORS 138.222(5)(b) abrogated the *Smith* rule because, when this court decided *Smith* in 1996, the legislature already had enacted the current version of ORS 138.222(5)(a), and, by applying the common-law rule, the court impliedly acknowledged its continuing vitality. Defendant cites *[Fulmer v. Timber Inn Restaurant and Lounge, Inc.](#)*, 330 Or 413, 424, 9 P3d 710 (2000), for the proposition that "[a]lthough the legislature may abrogate rules of the common law by statute," it cannot be considered to have done so when the court recognizes the common-law claim after the enactment of the legislation in question. Because this court's decision in *Smith* was issued after the amendment to ORS 138.222(5)(a) became effective, defendant argues that this court implicitly held, in *Smith*, that that statute did not abrogate the common-law rule. And, according to defendant, ORS 138.222(5)(b) should not be construed more broadly than ORS 138.222(5)(a) because ORS 138.222(5)(b) does not explicitly abrogate the common-law rule.

The state responds that defendant misunderstands the law that applied when this court decided *Smith*. The current version of ORS 138.222(5)(a) did not become effective until after the Court of Appeals issued its opinion in *Smith*. This court reviewed the Court of Appeals decision, not the amended statute that was enacted after that decision. We agree with the state that the timing of this court's decision in *Smith* does not give rise to an inference that the question presented here was answered there.

Next, defendant argues that the *Smith* rule and ORS 138.222(5)(b) are not in conflict. Defendant contends that, when the legislature enacted that provision, it would have understood that a served sentence could not be resentenced, and that the legislature used the phrase "affirmed count or counts" because there is no reason to "affirm" a conviction for which the sentence has been fully served and that is not challenged on appeal. According to defendant, even if the last sentence of ORS 138.222(5)(a)—"[t]he sentencing

court may impose a new sentence for any conviction in the remanded case"—abrogated the *Smith* rule, the last clause of ORS 138.222(5)(b)—"the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts"—has a substantially different, and narrower, meaning. The state disagrees, arguing that the pertinent language in subsections (5)(a) and (5)(b) is substantively the same.

In interpreting a statute, this court looks, first, at the text and context of the statute. *State v. Gaines*, 346 Or 160, 164, 206 P3d 1042 (2009). Defendant's textual argument rides on the meaning of the word "affirmed" in ORS 138.222(5)(b). According to *Black's Law Dictionary*, to affirm is to "confirm, ratify, or approve (a lower court's judgment) on appeal." *Black's Law Dictionary* 70 (10th ed 2014). There is nothing in the definition of the word "affirm" that necessarily limits its application as defendant contends. But, even if defendant were correct that there is no reason for an appellate court to "affirm" a conviction when the sentence for the crime has already been served, we doubt that the legislature intended to preclude a trial court from resentencing on all counts that were not reversed. First, as the state points out, ORS 138.222(5)(a) permits the trial court to impose a new sentence "for any conviction in the remanded case." Second, as we explained in *Febuary v. State of Oregon*, 361 Or 544, 562, 396 P3d 894 (2017), "trial courts may assemble sentences on individual counts to form a 'package' sentence," "in which the length of component counts are set in order to reach a desired total sentence." Because Oregon law permits trial courts to construct sentences in multi-count cases as a "package," we will not interpret ORS 138.222(5)(b) to preclude trial courts from considering all unreversed convictions when formulating a new sentence on remand.

The legislative history of House Bill (HB) 2224 (2005), which was later codified as ORS 138.222(5)(b), is consistent with that interpretation. Committee Counsel Heidi Moawad testified that a recent Court of Appeals case illustrated the reason for the proposed amendment. Audio Recording, House Committee on Judiciary, Criminal Law Subcommittee, HB 2224, Feb 1, 2005, at 8:48 (comments

of Heidi Moawad). In *State v. Fry*, 180 Or App 237, 246, 42 P3d 369 (2002), the Court of Appeals had reversed several of the defendant's convictions but had not remanded the case for resentencing on the remaining convictions. Moawad testified that, in that case, it would have been appropriate to remand for resentencing on the remaining counts. Audio Recording, House Committee on Judiciary, Criminal Law Subcommittee, HB 2224, Feb 1, 2005, at 8:50 (comments of Heidi Moawad). She explained that the proposed amendment would permit appellate courts to order exactly that and would prevent defendants from "getting a windfall" based on the way a case was sentenced, for example, concurrently versus consecutively. *Id*. at 9:05. Assistant Attorney General Jonathan Fussner also testified in support of the bill, stating that the amendment was not about punishing a defendant more harshly because he had appealed; rather, the purpose was to allow courts to adjust the sentence on the remaining counts to "get back [to] the sentence * * * that originally was imposed and that the court believes is the right sentence." *Id*. at 12:50 (comments of Jonathan Fussner). In response, a representative from the Oregon Criminal Defense Lawyers Association argued that it would not make sense for a defendant to be given the same sentence on remand after successfully appealing one or more of his convictions. *Id*. at 12:45 (comments of Kelly Skye). But, at the very least, she asserted, the authority to resentence on the remaining counts should be limited to counts arising out of the same criminal episode as the reversed count or counts. *Id*. at 28:53.

Thus, although witnesses disagreed about the scope of the trial court's authority on remand, their comments reflect an understanding that trial judges have authority to craft what amounts to a "package" sentence. *See Febuary*, 361 Or at 562 (explaining that "trial courts may assemble sentences on individual counts to form a 'package' sentence"). We conclude that, in enacting ORS 138.222(5)(b), the legislature intended to permit judges to resentence defendants on all of the convictions that remain on remand.[3]

---

[3] We decide that that authority exists in the factual context presented here—where all of defendant's crimes were committed in the same criminal episode. We do not decide whether that authority would extend to other factual contexts

### 2.   Defendant's double jeopardy argument

For similar reasons, we also reject defendant's argument that the federal Double Jeopardy Clause precludes interpreting ORS 138.222(5)(b) to permit resentencing on defendant's UUW convictions. Assuming, without deciding, that defendant preserved an objection based on double jeopardy, defendant's argument fails. The Double Jeopardy Clause prohibits multiple punishments for the same offense. *United States v. DiFrancesco*, 449 US 117, 127-28, 101 S Ct 426, 66 L Ed 2d 328 (1980). It protects against "additions to a sentence in a subsequent proceeding that upset a defendant's legitimate expectation of finality." *Jones v. Thomas*, 491 US 376, 385, 109 S Ct 2522, 105 L Ed 2d 322 (1989). According to defendant, that expectation generally arises after a sentence is complete. *See United States v. Daddino*, 5 F3d 262, 265 (7th Cir 1993) (defendant acquired a legitimate expectation of finality because defendant had completed service of his incarceration and paid all fines and restitution)

Defendant cites *United States v. Arrellano-Rios*, 799 F2d 520 (9th Cir 1986), in support of that contention. In *Arrellano-Rios*, the defendant was convicted on three counts and sentenced to concurrent, one-year sentences on the first two and a consecutive, five-year sentence on the third count. *Id*. at 522. On appeal, the court reversed the defendant's third conviction but declined to remand the case for resentencing because it concluded that the defendant had served the one-year sentences on the first two counts. *Id*. at 523. The court explained that "increasing a legal sentence that already has been fully served would violate the Double Jeopardy Clause." *Id*. Because neither party had "challenged the legality of [the defendant's] sentence" on the first two counts, the court concluded, he "never [had] any reason to question that his sentences on those counts would be fully served by incarceration for one year." *Id*. at 524.

The state responds that the Ninth Circuit more recently has held that its decision in *Arrellano-Rios* does not apply to sentences that are imposed in multi-conviction cases under the federal sentencing guidelines. *United States*

---

or whether other law would limit the exercise of that authority in those circumstances. Those arguments are not raised in this case.

*v. Radmall*, 340 F3d 798 (9th Cir 2003). In *Radmall*, the court held that the defendant's original sentence constituted a single "package" that reflected "his overall offense conduct rather than separate and independent sentences on each court." *Id*. at 801. Accordingly, the court explained, "when [the defendant] appealed his conviction and sentence on count I, he was prevented from gaining a legitimate expectation of finality on his sentence for count II." *Id*.

Defendant argues that *Radmall* is not relevant to the facts of this case because Oregon's sentencing system is unlike the "unified term of imprisonment" system at issue in that case. However, as we explained above, trial courts in Oregon *do* have discretion to assemble package sentences. *Febuary*, 361 Or at 562. Defendant does not convince us that the Double Jeopardy Clause requires us to interpret ORS 138.222(5)(b) to preclude resentencing on his UUW convictions.

We conclude that ORS 138.222(5)(b) gave the sentencing court in this case the authority to impose new sentences on the counts that remained on remand, including defendant's UUW convictions.[4]

B.   *Defendant's Arguments under* Pearce *and* Partain

We turn, next, to defendant's arguments under *Pearce* and *Partain*. In *Pearce*, the United States Supreme Court held that due process requires that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 US at 725. And, "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id*. In order to "assure the absence of such a motivation," the Court articulated the following two prophylactic rules:

---

[4] The existence of that authority does not mean that its exercise is immune from challenge. For instance, in a case in which a defendant seeks to prove that a sentencing court acted vindictively, the fact that, at the time of resentencing, a sentence attributable to a certain crime already has been served may be relevant.

"[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

*Id.* at 726.

In *Partain*, this court overruled its prior decision in *State v. Turner*, 247 Or 301, 313, 429 P2d 565 (1967). *Partain*, 349 Or at 23. In *Turner*, this court held that "[a]fter an appeal or post-conviction proceeding has resulted in the ordering of a retrial for errors other than an erroneous sentence, *** and the defendant has again been convicted, no harsher sentence can be given than that initially imposed." 247 Or at 313. The *Turner* court acknowledged that circumstances might arise in which a judge, on remand, would be justified in imposing a more severe sentence. *Id.* Even so, the court concluded that "permitting a harsher sentence under such circumstances raises difficulties in judicial administration. It would require a court reviewing the propriety of the second sentence to make a subjective determination whether the new information justified and was in fact the motive for the more severe sentence." *Id.* at 314. Consequently, the court determined that "the argument for efficient judicial administration outweighs the possible advantages of permitting more severe sentences upon the basis of new information." *Id.* at 315.

In *Partain*, the court concluded that *Turner* "rested on an unexamined elaboration on the right of appeal guaranteed by ORS 138.020—*i.e.*, that the right of appeal necessarily includes the right to have the length of any resentence limited to the length of the sentence originally imposed." 349 Or at 21. The court explained that changes in the law pertaining to criminal sentencing and appeals since *Turner* was decided made clear that *Turner*'s "expansive reading of the right to appeal" was not viable. 349 Or at 22.

Despite overruling *Turner*, the court recognized "the possibility that trial courts may employ their sentencing authority to punish defendants for having the temerity to appeal earlier convictions and sentences." 349 Or at 17. In considering how Oregon courts should approach claims of vindictiveness in sentencing, post-*Turner*, the court found no obvious answer in the Oregon Constitution and determined that the federal Due Process Clause provides the relevant source of law. *Id*. at 23-24. Taking its cue from the United States Supreme Court's decision in *Pearce*, the court announced the following rules:

> "If an Oregon trial judge believes that an offender whom the judge is about to resentence should receive a more severe sentence than the one originally imposed, the judge's reasons must affirmatively appear on the record. Those reasons must be based on identified facts of which the first sentencing judge was unaware, and must be such as to satisfy a reviewing court that the length of the sentence imposed is not a product of vindictiveness toward the offender. Absent such facts and reasons, an unexplained or inadequately explained increased sentence will be presumed to be based on vindictive motives, and will be reversed."

*Id*. at 25-26.

Thus, as understood and articulated by this court in *Partain*, due process requires, first, that a judge who resentences a defendant to a more severe sentence than the one originally imposed make a record of the reasons for doing so. *Id*. Second, those reasons (1) must be based on identified facts of which the first sentencing judge was unaware, and (2) must satisfy a reviewing court that the length of the sentence imposed is not a product of vindictiveness. *Id*. If those requirements are not met, the increased sentence is presumed vindictive. *Id*. at 26.[5]

1.  *State's argument that the* Pearce/Partain *requirements do not apply*

Before we consider whether those requirements were met in this case, we take up the state's preliminary

---

[5] We need not decide whether this court's statement in *Partain* differs from the Supreme Court's articulation in *Pearce* because we conclude that a different standard applies in this case, where a second judge resentenced defendant on remand.

argument that they do not apply at all. Relying on cases decided by the United States Supreme Court after *Pearce*, the state argues that the *Pearce*/*Partain* requirements do not apply, as a categorical matter, where, as here, a different judge resentences the defendant on remand.[6] Defendant, for his part, argues that the fact that a second judge from the same court sentences a defendant is not sufficient to remove the reasonable risk of vindictiveness caused by institutional bias. According to defendant, a blanket exception to the *Pearce*/*Partain* rule for sentences imposed by different judges would permit actual vindictiveness to play a part in sentencing by precluding the application of the presumption in cases where there remains a reasonable likelihood of vindictiveness.

The Supreme Court has not explicitly decided that issue. In *Pearce*, a different judge resentenced the defendant on remand, but, in a later case, the Court dismissed that fact as irrelevant, concluding that it had not been drawn to the Court's attention, and "declin[ed] to read *Pearce* as governing the issue." *Texas v. McCullough*, 475 US 134, 140 n 3, 106 S Ct 976, 89 L Ed 2d 104 (1986). Thus, we must glean what we can about how the Supreme Court would decide the issue from the Court's reasoning in *Pearce* and its progeny.[7]

The case of *Chaffin v. Stynchcombe*, 412 US 17, 25, 93 S Ct 1977, 36 L Ed 2d 714 (1973), provides a good starting point because it helpfully explains the Supreme Court's decision in *Pearce* as establishing two related, prophylactic rules: (1) that, after a new trial, the reasons for a more severe sentence "must affirmatively appear"; and (2) that those reasons "must be based upon 'objective information

---

[6] The state acknowledges that it did not raise, before the sentencing court or the Court of Appeals, the argument that the presumption of vindictiveness does not apply where the resentencing is done by a different judge than the one who imposed the original sentence. However, we agree with the state that that argument is a permissible alternative basis on which this court may affirm the judgment. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). The issue presented is one of law, and the factual record could not have developed differently had the state raised the issue earlier in the proceedings. *Id*.

[7] As we noted in *Partain*, "[t]his court could, of course, announce additional requirements under our own constitution or pursuant to statute," 349 Or at 25; however, we found, in that case, no obvious basis for doing so in the Oregon Constitution or state statutory law, and defendant does not posit a source here.

concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.'" (Quoting *Pearce*, 395 US at 726.) In *Chaffin*, the Court said:

> "In *Pearce* it was held that vindictiveness, manifesting itself in the form of increased sentences upon conviction after retrial, can have no place in the resentencing process. Under our constitutional system it would be impermissible for the sentencing authority to mete out higher sentences on retrial as punishment for those who successfully exercised their right to appeal, or to attack collaterally their conviction. Those actually subjected to harsher resentencing as a consequence of such motivation would be most directly injured, but the wrong would extend as well to those who elect not to exercise their rights of appeal because of a legitimate fear of retaliation. Thus, the Court held that fundamental notions of fairness embodied within the concept of due process required that convicted defendants be 'freed of apprehension of such a retaliatory motivation.' [*Pearce*, 395 US at 725]. To that end, the Court concluded that 'whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.' *Id*. [at 726]. And, as a further prophylaxis, it was stated that those reasons must be based upon 'objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.' [*Id*.]"

412 US at 24-25 (footnotes omitted).

The Court then went on to consider whether to apply *Pearce* in the circumstance presented—the circumstance in which, by state design, juries, rather than judges, impose sentence. 412 US at 26-28. The Court reasoned that, as long as "improper and prejudicial information regarding the prior sentence is withheld" from the second jury, there is no basis for holding that jury resentencing poses any real threat of vindictiveness, and concluded that *Pearce* did not apply. *Id*. at 28.

Before the Court decided *Chaffin*, it also had considered whether the *Pearce* rules were applicable in the context of a two-tier system in which a defendant is entitled to a trial *de novo* in a superior court. *Colten v. Kentucky*, 407

US 104, 92 S Ct 1953, 32 L Ed 2d 584 (1972). In *Chaffin*, the Court explained why it had decided, in *Colten*, that the *Pearce* requirements did not apply:

> "While noting that '[i]t may often be that the [*de novo* 'appeal' court] will impose a punishment more severe than that received from the inferior court,' [*Colten*, 407 US at 117], we were shown nothing to persuade us that 'the hazard of being *penalized* for seeking a new trial, which underlay the holding of *Pearce*, also inheres in the *de novo* trial arrangement.' *Id*. [at 116] (emphasis supplied). In short, the Due Process Clause was not violated because the 'possibility of vindictiveness' was not found to inhere in the two-tier system. [*Id*.]"

412 US at 26 (emphasis in original). Thus, in both *Chaffin* and *Colten*, the Court considered the constitutionality of state procedures that eliminate the possibility of vindictiveness and held that, in that context, neither a statement of the reasons for the imposition of a more severe sentence nor a presumption of vindictiveness are required.

Two other cases that the Supreme Court decided after *Pearce* are more on point—*Alabama v. Smith*, 490 US 794, 109 S Ct 2201, 104 L Ed 2d 865 (1989), and *McCullough*, 475 US at 134. In both of those cases, the same judge imposed a more severe sentence after originally imposing a less severe sanction. *Smith*, 490 US at 796-97; *McCullough*, 475 US at 135-36. And in both of those cases, the judge, on retrial, provided reasons for the imposition of the more severe sentence. *Smith*, 490 US at 797; *McCullough*, 475 US at 136.

In *Smith*, the trial court imposed the original sentence after the defendant's guilty plea. On remand, the same court conducted a full trial and imposed a harsher sentence because it had learned new information about the defendant's crimes. *Smith*, 490 US at 796-97. The Supreme Court described that new information in detail:

> "The trial court explained that it was imposing a harsher sentence than it had imposed following respondent's guilty plea because the evidence presented at trial, of which it had been unaware at the time it imposed sentence on the guilty plea, convinced it that the original sentence had

been too lenient. \*\*\* As the court explained, at the time it imposed sentence on the guilty plea, it had heard only '[respondent's] side of the story'; whereas now, it 'has had a trial and heard all of the evidence,' including testimony that respondent had raped the victim at least five times, forced her to engage in oral sex with him, and threatened her life with a knife. [*Id*.] The court stated that this new information about the nature of respondent's crimes and their impact on the victim, together with its observations of his 'mental outlook on [the offenses] and [his] position during the trial,' convinced it that it was 'proper to increase the sentence beyond that which was given to [him] on the plea bargain.' *Id*. [at 30.]"

*Id*. In *McCullough*, the judge explained that, on retrial, she had heard evidence from two witnesses who had not testified at the original trial and that she had imposed a more severe sentence based on that new, significant evidence. 475 US at 136.

In both *Smith* and *McCullough*, the Court upheld the more severe sentences against *Pearce* challenges. In *Smith*, the Court distinguished the facts of that case from *Pearce*, explaining that

"in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged. The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation. \*\*\* Finally, after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present."

490 US at 801. In *McCullough*, the Court gave two reasons for its decision. First, the court noted that the trial judge had not been overruled by a higher court. *McCullough*, 475 US at 138. The "second trial came about because the trial judge herself concluded that the prosecutor's misconduct required it." *Id*. Second, the Court said, the trial judge had provided "an on-the-record, wholly logical, nonvindictive reason for the sentence." *Id*. at 140. In the Court's words, it "read *Pearce* to require no more." *Id*.

We read the Supreme Court cases decided since *Pearce* as demonstrating that the application of the two prophylactic rules adopted in *Pearce* will depend on the

particular circumstances presented. In each case, the Court has looked, and we think will continue to look, to the particular circumstances presented to determine whether there is an apparent need to "guard against vindictiveness in the resentencing process." *Chaffin*, 412 US at 25 (emphasis omitted); *McCullough*, 475 US at 138 (internal quotation marks omitted). Thus, in circumstances such as those presented in *Chaffin* and *Colten*, the risk of vindictiveness is low; the second sentencer will not be required to articulate the reasons for a more severe sentence, and a failure to do so will not give rise to a presumption of vindictiveness. In other circumstances, such as those presented in *Smith* and *McCullough*, where the judge, on remand, articulates the reasons for a more severe sentence, the Court will not presume vindictiveness as long as those reasons are "wholly logical" and "nonvindictive."[8] *McCullough*, 475 US at 140.

We are cognizant that the Supreme Court's post-*Pearce* cases can be read more broadly to indicate an intent to dispense with the requirement that a judge who imposes a second, harsher sentence must articulate its reasons for doing so, and that some lower courts seem to read them in that way. *See, e.g.*, *Gonzales v. Wolfe*, 290 Fed Appx 799, 813 (6th Cir 2008) (holding that, although no reason for more severe sentence stated, no presumption of vindictiveness because different judge resentenced defendant).[9]

However, many other federal courts read the cases as we do. For instance, in *Macomber v. Hannigan*, 15 F3d 155, 157 (10th Cir 1994), the Tenth Circuit held that the

_____

[8] We note that the Court's use of the phrase "presumption of vindictiveness" is somewhat confusing. A "presumption" traditionally shifts the burden of proof of production or persuasion to the opposing party, who is then invited to overcome it. *See Black's Law Dictionary* 1376 (10th ed 2014) (so defining the word "presumption"). If operating in that fashion, a trial court's failure to give reasons for a more severe sentence would give rise to a presumption of vindictiveness that the trial court could rebut by providing sufficient nonvindictive reasons for the sentence. When the Court has discussed the "presumption of vindictiveness," however, it has said that the presumption does *not apply* when a trial court *first* offers a nonvindictive reason for the sentence imposed. *See, e.g.*, *McCullough*, 475 US at 140 (explaining that no presumption when judge provides an "on-the-record, wholly logical, nonvindictive reason for the sentence").

[9] For a discussion of the dangers of the Supreme Court's erosion of the *Pearce* rule, see Stephen G. Murphy, Jr., *Limits on Enhanced Sentences Following Appeal and Retrial: Has* Pearce *Been Pierced?*, 19 Conn L Rev 973, 988-995 (1986-87).

presumption of vindictiveness does not apply when a different judge resentences a defendant *and* the judge satisfies the added condition, articulated in *McCullough*, 475 US at 140, that the judge "provides an on-the-record, wholly logical, nonvindictive reason for the sentence." *See also United States v. Anderson*, 440 F3d 1013, 1016 (8th Cir 2006) (holding no presumption of vindictiveness when different judge imposes more severe sentence and record contains nonvindictive reasons for more severe sentence); *United States v. Newman*, 6 F3d 623, 630 (9th Cir 1993) ("when a second sentencing judge provides an 'on-the-record, wholly logical, nonvindictive reason for the sentence,' the requirements of *Pearce* are met"); *Rock v. Zimmerman*, 959 F2d 1237, 1257 (3rd Cir 1992), *overruled on other grounds by Kontakis v. Beyer*, 19 F3d 110 (3rd Cir 1994) (holding *Pearce* presumption does not apply where second sentence imposed by different sentencer and record provides "affirmative assurance that the harsher sentence reflects simply a fresh look at the facts and an independent exercise of discretion").

Other courts that have not explicitly held that the second judge must satisfy the "added-condition" requirement nevertheless have noted that the judge, on remand, articulated reasons for the increased sentence. *See United States v. Rodriguez*, 602 F3d 346, 359 (5th Cir 2010) (stating that second judge provided "more than sufficient reasons for the greater sentence"); *United States v. Clark*, 84 F3d 506, 508 (1st Cir 1996) (stating "second trial judge heard all of the sentencing evidence anew and made findings adequate to support the sentence imposed"); *United States v. Cheek*, 3 F3d 1057, 1064 (7th Cir 1993) (stating second judge "identified two aggravating facts that arose subsequent to [the defendant's] original trial, justifying the higher sentence"); *United States v. Perez*, 904 F2d 142, 147 (2nd Cir 1990) (stating second judge based sentencing on "proper, non-vindictive reasons for the sentence imposed"—the defendant's "greed, her lack of remorse, the fact that she played a major role in the drug conspiracy, and the fact that, although never an addict herself, she had immersed herself and her son in the business of drugs").

In *Pearce*, the Court recognized that due process requires that courts refrain from vindictiveness in

sentencing, and that defendants be freed of the apprehension of vindictiveness. The fact that a different judge imposes an increased sentence does not eliminate those concerns or the possibility that "institutional prejudices might infect a trial judge's resentencing of a defendant after a successful appeal." *McCullough*, 475 US at 150. Although a jury without knowledge of a prior sentence is "unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals," *Chaffin*, 412 US at 27, another judge operating within the same system as the original judge likely will have that knowledge and understandably could be sensitive to those interests. Thus, we decline to adopt a categorical rule that a difference in judges makes the first prophylactic rule adopted in *Pearce* inapplicable. We will not depart from our conclusion in *Partain*, that "[i]f an Oregon trial judge believes that an offender whom the judge is about to resentence should receive a more severe sentence than the one originally imposed, the judge's reasons must affirmatively appear on the record." 349 Or at 25-26.

We reach a different conclusion, however, as to the second prophylactic rule imposed in *Pearce*. In *Pearce*, the Court said that, to avoid a presumption of vindictiveness, the judge, on remand, must give reasons based only "upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 US at 726. However, in *McCullough*, the Court clarified that that was only one way in which the state could demonstrate a lack of vindictiveness:

> "Nothing in *Pearce* is to be read as precluding a rebuttal of intimations of vindictiveness. As we have explained, *Pearce* permits 'a sentencing authority [to] justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings.' [*Wasman v. U.S.*, 468 US 559, 572, 104 S Ct 3217, 82 L Ed 2d 424 (1984)] (Powell, J., concurring in part and concurring in judgment). This language, however, was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified."

*McCullough*, 475 US at 141. In *McCullough*, even though the same judge who imposed the original sentence later imposed a more severe sentence, the Supreme Court held that that sentence met the *Pearce* requirements because the judge supported it with "wholly logical, nonvindictive reason[s]." *Id.* at 140. We think that the Supreme Court would follow the same analysis in circumstances in which a different judge considers the facts presented on remand. When two different judges assess the facts of a particular case, those two different individuals reasonably may reach different conclusions about the appropriate punishment. The same may be true when one judge assesses the case during an original trial, and the other assesses it later, on remand. As long as the second judge gives a "wholly logical, nonvindictive reason" for the more severe sentence, we conclude that the second *Pearce* requirement has been met. The same, therefore, goes for the *Partain* requirements.[10]

2. *Application of* Pearce/Partain *in this case*

The first step in a *Pearce/Partain* vindictiveness analysis is to determine whether the sentence on remand was more severe than the sentence originally imposed. A sentence is "more severe" for *Pearce/Partain* purposes when "the total length of the second sentence exceeds that of the first." *Febuary*, 361 Or at 563. Here, the total length of defendant's second sentence—276 months—exceeds the length of his first sentence—250 months—and therefore qualifies as a "more severe" sentence.

The next step, in this circumstance, is to determine whether the court on remand articulated a "wholly logical, nonvindictive reason" for the more severe sentence.

Although the state did not seek departure sentences in defendant's original prosecution, it did so on remand.[11] On remand, the state alleged and tried four enhancement factors to the jury on the first-degree kidnapping conviction.

---

[10] We note that, even when the presumption of vindictivess does not apply, a defendant always may demonstrate a due process violation by "affirmatively prov[ing] actual vindictiveness." *Febuary*, 361 Or at 558 (quoting *Wasman v. United States*, 468 US 559, 569, 104 S Ct 3217, 82 L Ed 2d 424 (1984)).

[11] As noted, defendant objected to the new allegations, but the trial court permitted them and defendant does not raise that issue in this court.

The jury unanimously found that the state had proved each of the four factors. In imposing sentence, the court stated that it "would impose an upward durational departure based on the jury's findings." The court also gave reasons for the increased sentence in *Partain* terms; it referred to other information available on resentencing that it considered unknown to the original court. We need not consider whether that information alone would meet the *Pearce/Partain* requirements. The fact that the state alleged, and the jury found, four significant enhancement factors that had not been alleged or found during the original trial is a "wholly logical, nonvindictive reason" for the increased sentence, and that reason appears in the record. We conclude that the sentencing judge's reasons for the more severe sentence were sufficient to comply with the requirements of *Pearce* and *Partain*.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.